## HANCOCK v. COMMONWEALTH.

Court of Appeals of Kentucky.

Dec. 4, 1953.

Bertram & Bertram, Bruce H. Phillips, Monticello, for appellant.

J. D. Buckman, Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., James A. Hicks, Albany, for appellee.

STEWART, Justice.

On July 15, 1952, Dickie Hancock was indicted on a charge of unlawful possession of intoxicating liquors in dry territory for the purpose of sale, in violation of KRS 242.230(1). The indictment set forth three additional counts, each of which recites that, on a previous occasion, Hancock had been arrested and found guilty of violating the local option law. See KRS 242.990(1).

At the regular November term of the Wayne Circuit Court Hancock was tried, found guilty as a third offender, and sentenced to one year's confinement in the state penitentiary. A reversal is urged, first, because it is claimed the property was wrongfully seized without a search warrant, so that the accused should have had a directed verdict; and, next, because the accused was entitled to have his defense submitted to the jury by a concrete instruction.

On June 28, 1952, Otto Holden, an investigator for the federal Bureau of Internal Revenue, under the authority of a warrant issued by Viley O. Blackburn, a

United States Commissioner, searched a certain concrete block building located at the intersection of Murl Road and Kentucky Highway 90, four miles south of Monticello. He was accompanied by Ed Cowan, a State Alcoholic Beverage Control agent, and two constables of Wayne County. The warrant directed the searching officers to seize any distilled spirits upon which no tax had been paid. According to the return on the warrant, nothing was found on the premises.

While the search was being made, Hancock drove up alongside the building in a green Mercury sedan and stopped in the presence of the officers. Holden approached the car, and, upon looking into the rear window, noticed twenty half-cases of beer in plain view in the back seat. He then informed Hancock that he was an investigator for the Bureau of Internal Revenue and he seized the beer and placed Hancock under arrest.

The facts just mentioned were substantially corroborated by the testimony of Ed Cowan and by that of Frank Wright, a constable, both of whom were witnesses to the events that transpired.

Hancock denied the car or the liquor were in his possession. He testified the car which he was operating was owned by Wilroe Massengale, a soldier on leave from Fort Knox, and he said Massengale was present and in full control of the vehicle at the time. Hancock stated he simply got into the car to ride around and did not discover the beer until some time later, but he admitted he had drunk several cans of it before his arrest. Massengale could not be located by Hancock on the day of the trial, but the latter was permitted to read his affidavit in support of his story as we have outlined it above.

Cowan and Wright maintained no one was with Hancock when he drove up to the building which was being searched. It is apparent the evidence is in conflict on this point. Several witnesses stated that Hancock had a bad reputation for trafficking in illegal whiskey in Wayne County.

 Hancock argues that the search warrant authorized a search of only the concrete block building and that a search of the automobile was illegal and the beer obtained thereby could not be used as evidence against him. But we fail to see what effect this would have on the case before us. The search warrant had no connection with the discovery of the beer in the automobile, and the Commonwealth does not contend that it was found and seized under it. It is fundamental that the constitutional guaranty which affords protection from an illegal search does not prohibit a seizure without a warrant where there is no need of a search; that is, where the object sought is visible, open and obvious to anyone who even casually looks about. See Wilson v. Commonwealth, Ky., 258 S.W.2d 497. Here the beer was fully disclosed to the eye when Holden approached the machine. The procedure was undeniably legal in this case.

The last point relied upon for reversal by Hancock relates to the instructions given by the trial court. It is his contention that he was entitled to have a concrete instruction presented to the jury with regard to his defense, namely, that the alcohol was not in his possession. As was heretofore shown, Hancock not only denied possession of the beer but also of the car in which the beer was found.

 The jury was instructed to return a verdict of guilty should it believe that Hancock "did unlawfully and willfully have in his possession a quantity of beer for the purpose of sale in local option territory." The negative of this instruction was presented by the usual reasonable doubt instruction. We have said in cases like the one at bar that when the defense for the illegal possession of whiskey is but a denial of the charge, it is not necessary to instruct on the accused's theory of the case. See Hammons v. Commonwealth, Ky., 252 S.W. 2d 51. Where the language of the instructions is such that the ordinary layman can readily understand and comprehend it, no concrete instruction on a defense need be given. See Reynolds v. Commonwealth,

Ky., 257 S.W.2d 514, and cases cited therein.

Here, in view of Hancock's denial of possession, the jury, under the instructions set out, could not have failed to understand that before they convicted him, they must believe beyond a reasonable doubt the beer was in his possession for sale in local option territory. The instruction desired would have done no more than present to the jury something already before them. This obvious redundancy was unnecessary and was correctly avoided by the trial court.

Wherefore, the judgment is affirmed.