B. E. ERVIN *v.* STATE.

(*Jackson,* April Term, 1954.)

Opinion filed May 21, 1954.

CLARKE, NORRIS & MATHERNE, of Brownsville, for plaintiff in error.

NAT TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The plaintiff in error was indicted and convicted for driving while drunk with his punishment fixed at a fine of $75 and a 10-day jail sentence both being imposed by the jury, the jury having been requested to fix the punishment if the plaintiff in error was found guilty. From this conviction an appeal has been seasonably perfected

to this Court and we now have the matter for determination.

On an afternoon in October, 1952, a highway patrolman was driving westwardly on U. S. 70 from Brownsville, when he passed a car which he says was zigzagging upon the road. After radioing to Brownsville he turned his car around and followed this car overtaking it near a filling station. He halted the car. It was driven by the plaintiff in error. This patrolman and another one who came to the scene later, as a result of the radio call, say that the plaintiff in error was in an intoxicated condition.

There was no testimony introduced by the plaintiff in error.

The main assignment urged on behalf of the plaintiff in error is to the effect that he was committing no crime in the presence of the officers and that they did not discover his intoxicated condition until after he had been stopped by them. In other words he was unlawfully arrested, arrested without cause, and then as a result of this unlawful arrest it was discovered that he was intoxicated.

This identical situation was presented to this Court in 1950 in a case from East Tennessee, *Satterfield* v. *State,* 196 Tenn. 573, 269 S. W. (2d) 607, Union Criminal, wherein an opinion was rendered in the May Term 1950, prepared for this Court by the Chief Justice. In disposing of the question here presented the Chief Justice said in the Satterfield case, supra:

"They finally met again, the officer blocking the highway. The defendant was driving his car. Officer McKelvey testified: 'I saw he was drunk and told him he was under arrest and he hit me in the side and knocked my flash light out of my hand and we

462

had a little fight there.' ''The only question made on this appeal is that the State's evidence should have been excluded because all proof of his alleged intoxication resulted from an unlawful search. The argument of defendant's counsel seems to be that proof of his intoxication could not be established except by some form of search which violated his constitutional right. To this we cannot give our assent.

''As we view the testimony his intoxicated condition was evidenced by his conduct and physical appearance. But if we should concede that the defendant's arrest was not justified there is no constitutional immunity from an unlawful arrest. The constitution only guarantees freedom from 'unreasonable searches and seizures.' The right of the officer to search the car of the defendant is not involved in the instant case. We therefore express no opinion as to whether the search was lawful or unlawful.

''The case of *High* v. *State,* 188 Tenn. 166, 217 S. W. (2d) 774 controls the case at bar. The facts are almost identical with the case before us. There the police of the town of Gallatin received information that there was a disturbance several blocks down the street. They went to the place of disturbance and saw High pulling away from the curb. They stopped him and found that he was drunk. Exactly the same question was made there as is now being urged upon us. It was held: * * * 'This was not a search and seizure as contemplated by our constitution.' The assignment is accordingly overruled.''

 It seems to us after reading the record in the instant case that it is a stronger case for the State than was the Satterfield case, supra, because in the Satterfield

case the officers had set up a road block. In the instant case the plaintiff in error was zigzagging along the road in a slow fashion so as to indicate to the officer who saw him that he was possibly drunk. It clearly, under such a situation, became the duty of the officer to stop the car and to investigate. We say this in view of the fact that this of course is one of the first indications of drunk driving, that is, zigzagging down the road or driving in an unnatural fashion. The fact that there had been no wreck does not excuse the man. An officer is not required to wait until one has a wreck but he can and must exercise his reasoning and if things and circumstances appear from the way a man drives to indicate, honestly, to the officer that he is in an intoxicated condition or something of the kind it is the duty of the officer to stop the car. When he is stopped in this way it is not an unlawful arrest and any additional evidence that they get by reason of stopping the car thus, is not illegal. Here the plaintiff in error is not indicted for the possession of intoxicating liquor, but for driving his automobile while in an intoxicated conditon. Part of this evidence to indicate an intoxicated condition is evidence that the officer saw him driving zigzagging down the road, the other of course smelling and seeing his condition is obtained after he stopped. To our minds this is clearly not an illegal arrest and the evidence produced here is valid.

The next assignment has really caused us more concern than any in this case. This insistence is that the trial court erred in denying the challenge of the plaintiff in error to the array. This challenge sought to have the panel discharged upon the ground that it was the regular jury and that this jury had heard the trial judge impose jail sentences in a number of drunk driving cases which

were tried at the same term of court and immediately preceding this trial. In one of these cases the jury had merely convicted and fined the drunk driver and the trial judge in conformity with his practice had added a 10-day jail sentence. It is stipulated by the District Attorney General that all of these facts are true. It is not shown though by the affidavit and the stipulation what the jurors would have said as to whether or not this fact—what the trial judge had done in the preceding cases—had influenced them in fixing their penalty in this case. This of course is a logical and inferential argument based on what had happened before in the presence of these jurors. The State takes the position that since, even though admitting that the jury or majority of them heard the trial judge's remarks about a jail sentence, the jury was not examined in the present case to show who heard these remarks and whether or not they did hear them and whether or not such remarks influenced them. That since this was not shown that plaintiff in error was prejudiced thereby. We think that even though it may be assumed that these jurors had heard these remarks and felt that since this was a rule of the trial judge that a man should have ten days if he was guilty that this is not such prejudice as would be reversible error. The stipulated facts are that all of the other drunk drivers who had been convicted by a jury had added thereto a 10-day jail sentence which was the practice of the trial judge in trying to break up drunk driving in his circuit. This was probably what he felt was a minimum that should be given drunk drivers and under certain circumstances more might be added.

· The plaintiff in error knowing these facts tried to obviate the jail sentence which would have been imposed by the trial judge had he fixed the sentence, demanded

that the jury fix the sentence provided they found the plaintiff in error guilty. Obviously the plaintiff in error sought to obviate what he knew would be given him provided he was found guilty by the trial judge in asking that the jury fix the punishment. If this argument of the plaintiff in error is accepted it is perfectly possible, and not out of reason, to say that any plaintiff in error in these drunk driving cases could make this same demand and then when tried by a jury could argue that the newspapers and trial judge and previous things had made the statement that the drunk driver should have a certain penalty and that thereby the jury were prejudiced by these remarks and the sentence should not stand. Frankly we do not think such is reversible error.

 It is next complained that a portion of the charge to the effect that it is unlawful to operate a motor vehicle after the use of an intoxicant was erroneous. This portion of the charge is immediately followed by the statement that the intoxication must be to the extent that the person loses his sense of reason to the point where his car becomes a dangerous instrumentality to life or limb. We think that if you take the charge as a whole that it adequately covers the law and that there is no reversible error therein. The State likewise argued and correctly so that since there was no special request seeking an amplification of this portion of the charge then that it cannot be complained of. *Turner* v. *State,* 188 Tenn. 312, 219 S. W. (2d) 188.

The next complaint is that the charge of the court on the question of punishment invaded the province of the jury and required a verdict of guilty. Immediately prior to the portion of the charge complained of the trial judge instructed the jury that upon a plea of not guilty the

plaintiff in error was entitled to a presumption of innocence which remained with him until his guilt had been proven beyond a reasonable doubt. The trial judge thus very definitely instructed the jury in substance first, as to the punishment fixed by the statute for the offense, second, that in view of a motion made on behalf of the plaintiff in error the discretion theretofore vested in the court as to punishment had become vested in the jury and that in their discretion they might fix the jail sentence not in excess of the statutory limits.

The same theory or reply might be made to this assignment as was made to the one preceding, that there was no special request amplifying this charge requested by the plaintiff in error. *Turner* v. *State*, supra.

The final and last insistence is that the punishment was excessive. In the first place the punishment is well within the statutory limits, the limits being 11 months and 29 days, he was only given 10 days and a $75 fine. In the second place the plaintiff in error requested that his punishment be assessed by the trial jury. Under such circumstances the punishment having been assessed by the trial jury this Court was without authority to review the punishment fixed by the jury so long as it lies within the statutory limits. *Thompson* v. *State,* 192 Tenn. 298, 241 S. W. (2d) 404.

We must affirm the judgment below for the reasons above expressed.