STATE of Missouri, Respondent,

v.

Eugene HEDRICK, Jr., Appellant.

No. KCD 27474.

Missouri Court of Appeals,
Kansas City District.

March 1, 1976.

James J. Wheeler, Keytesville, for appellant.

John C. Danforth, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

A jury in the Sullivan County Circuit Court found Eugene Hedrick, Jr., guilty of possession of lysergic acid diethylamide, commonly known as LSD, a Schedule I controlled substance under the drug control law. § 195.017 2(4)(i), RSMo 1973 Supp. The jury fixed the punishment at two years' imprisonment. § 195.200 1(1). This appeal followed.

At approximately 1:00 A. M., Officer Jerry Dale, a member of the Police Department of the City of Brookfield, observed appellant, Eugene Hedrick, Jr., sleeping in a city park in that city. He approached Hedrick and awakened him. The officer saw beer cans that had been under appellant and noted the odor of alcohol. Hedrick responded violently to being awakened and kicked the officer. The officer got the assistance of other persons in the park and subdued Hedrick. Hedrick was handcuffed and told by the officer that he was under arrest for public drunkenness.

Hedrick was taken to the police station. There he was directed to remove his belongings from his pockets and place them on a table. After he had removed some items, Officer Dale conducted a "frisk" search and discovered an Anacin tin in his jacket pocket. The officer opened the tin and saw two Anacin tablets and two purple tablets. Police officers at Brookfield ran a field test on the purple tablets, but the test did not reveal the nature of the substance. The tablets were then turned over to the State Highway Patrol and a test of them by a patrol chemist showed that they were lysergic acid diethylamide or LSD. Hedrick was then charged with illegal possession of a controlled substance.

A motion was filed on behalf of the defendant to suppress all evidence obtained as a result of his arrest, alleging that his arrest was illegal and that the subsequent search of his person violated state and federal constitutional protections.

A hearing was held on the motion. Officer Dale was the only witness. He testified to the circumstances of the arrest and search and the trial court overruled the motion to suppress. The trial court's ruling is assigned as error on this appeal.

Appellant first contends that his arrest without a warrant was illegal. Appellant argues that by § 85.561(3), RSMo 1969, a member of the police department of a city of the third class, into which Brookfield falls, has "power to make arrests without process in all cases in which any offense against the laws of the city shall be committed in his presence." He argues that for his arrest for public drunkenness to have been valid, the arresting officer must have known that he was committing the offense and the offense must actually have been

committed. He contends that his acquittal of the charge of violation of the ordinance is conclusive of the fact that he did not commit the offense, and, therefore, his arrest was illegal.

The state's brief simply ignores this argument of appellant. The state has assumed that the legality of the arrest is to be governed by the probable cause test, and it cites cases involving arrest for felony, without a warrant, in support of the position that such test is here applicable and that the facts known to the officer did constitute probable cause.

■ With some exceptions applicable to police in metropolitan areas (§§ 84.440 and 84.090, RSMo 1969), the law in this state distinguishes between felonies and misdemeanors insofar as arrests without a warrant are concerned. In the case of the former, probable cause to believe that the person arrested has committed a felony is required. In the case of a misdemeanor, the right to arrest without a warrant is limited to misdemeanors committed in the presence of the arresting officer. *State v. Gartland,* 304 Mo. 87, 263 S.W. 165, 168–170[4–7] (1924); *State v. Parker,* 378 S.W.2d 274, 281[5, 6] (Mo.App.1964). Section 85.561(3) has adopted the presence requirement for an arrest without a warrant for city ordinance violations. *State v. Evans,* 161 Mo. 95, 61 S.W. 590, 593 (1901).

The difficulty here arises from language in cases dealing with the "presence" requirement which use language to the effect that "information, or reasonable grounds to suspect, that a misdemeanor is being committed" (*State v. Gartland,* supra, 263 S.W. at 169) is not sufficient basis for an arrest without a warrant for a misdemeanor. *Gartland* involved a charge of murder against a member of the St. Joseph Police Department who had shot a citizen while pursuing his automobile which they suspected contained illegal liquor. The court held that defendants were not entitled to an instruction that they were in the performance of their duty if they "had reasonable ground to believe that the persons in the car they were pursuing had committed a misdemeanor * * *." 263 S.W. at 168–169. See also *State v. Davidson,* 44 Mo. App. 513, 517–518 (1891); *State v. Dunivan,* 217 Mo.App. 548, 269 S.W. 415, 417[4, 5] (1925); *State v. Parker,* 378 S.W.2d 274, 281[5, 6] (Mo.App.1964); *City of Independence v. Stewart,* 397 S.W.2d 765, 768[3, 4] (Mo.App.1965).

The above-quoted language is relied upon by appellant to support his contention that his acquittal of the drunkenness charge conclusively showed that he did not commit the offense and, therefore, his arrest was illegal, and that probable cause may not be relied upon to support the arrest. Appellant has cited no case in this state which has directly upheld his contention.

There are some cases in other jurisdictions which would tend to support appellant. See *Edgin v. Talley,* 169 Ark. 662, 276 S.W. 591 (1925); *Price v. Tehan,* 84 Conn. 164, 79 A. 68 (1911); *Muniz v. Mehlman,* 327 Mass. 353, 99 N.E.2d 37 (1951); *Colling v. Hjelle,* 125 N.W.2d 453 (N.D.1963).

A series of cases in Kentucky directly support appellant's position. There the court held that the validity of a search incident to an arrest must depend upon the legality of the arrest. When the arrest was for a misdemeanor and resulted in the discovery of evidence of another offense, the evidence so discovered was held to be admissible only if the defendant had, in fact, committed the misdemeanor upon which his arrest was based. *Billings v. Commonwealth,* 223 Ky. 381, 3 S.W.2d 770, 773 (1928); *Parrott v. Commonwealth,* 287 S.W.2d 440 (Ky.1956). In the latter case, the defendant was arrested for drunkenness in violation of a city ordinance. A search of his person following the arrest produced a pistol and he was accused of carrying a concealed weapon. He was found not guilty of the drunkenness charge and the court held that this finding was conclusive of the illegality of his arrest and precluded the use in evidence of the result of the search of his person.

However, this line of cases was overruled in *Pennington v. Commonwealth,* 429 S.W.2d 364 (Ky.1967). In that case the court stated (429 S.W.2d 365–366):

"The law of this jurisdiction as it relates to the search of an automobile upon arrest for a traffic violation was reviewed by this court in *Commonwealth of Kentucky v. Robey,* Ky., 337 S.W.2d 34. There we held under section one of the Kentucky Constitution a police officer may not without proper justification stop a motorist and that if he does stop a motorist without a bona fide cause any evidence obtained as a result of the stopping should be considered as having been illegally obtained and inadmissible. We have further held that if no criminal charge of the alleged offense for which the stopping was made has been filed against the accused then the trial court should determine as a preliminary fact in the prosecution in which the evidence is sought to be introduced whether or not there existed at the time probable cause for which an arrest could be made. *Parrott v. Commonwealth of Kentucky,* Ky., 287 S.W.2d 440; *Thomason v. Commonwealth of Kentucky,* 322 S.W.2d 104. In the *Robey* case, we pointed out that if there had been an acquittal on the original arresting charge or if it was still pending then the arrest could not be deemed lawful for the purpose of introducing evidence obtained thereunder.

"We now believe that this was in error. The crucial question to be determined by the trial court upon evidence out of the hearing of the jury is whether or not probable cause existed for the initial stopping. This should be done without regard to the pendency or the disposition of the initial offense. It is entirely possible that a defendant may be convicted on a charge when there was not probable cause for the initial arrest or may be acquitted on a charge where there was probable cause. Therefore, the outcome of the trial on the major offense should not be determined by the disposition of the arresting charge. *Parrott v. Commonwealth of Kentucky,* supra,

*Thomason v. Commonwealth,* supra, and *Commonwealth of Kentucky v. Robey,* supra, are hereby overruled to the extent they conflict with the rule herein expressed."

See also *Smith v. Hubbard,* 253 Minn. 215, 91 N.W.2d 756 (1958); *Garske v. United States,* 1 F.2d 620 (8th Cir. 1924).

■ Insofar as the validity of the arrest in the circumstances of this case is concerned, the requirement that the offense had been committed in the presence of the arresting officer should not be held to mean that the validity of the arrest depends upon whether or not the offense was, in fact, committed. If the facts and circumstances which the officer perceives are sufficient to give rise to a reasonable belief that the person arrested is violating a city ordinance, the fact that the defendant is subsequently acquitted of the charge does not render the arrest invalid nor affect the validity of a search properly incident to the arrest.

■ Here, the officer observed appellant sleeping in a public place at around 1:00 A.M.; upon awakening appellant the officer observed that he was lying on beer cans and smelled the odor of alcohol. When he was awakened, appellant responded violently by kicking at the officer. These circumstances were sufficient to warrant the officer in concluding that appellant was intoxicated and in arresting him for violation of the ordinance prohibiting persons who are intoxicated from appearing in public. The officer himself perceived the matters which formed the basis for his conclusion that appellant was violating the ordinance. Therefore, the arrest was for an offense committed in the presence of the officer and was a valid arrest.

■ Appellant next contends that, even if the arrest was valid, the motion to suppress should have been sustained because the "search and seizure was intolerable in intensity and was unrelated to the offense for which appellant was placed under arrest * * *." In connection with appellant's arrest and incarceration the police had the

right to conduct a search of his person. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The officer had the right to seize contraband. To paraphrase *United States v. Robinson,* "Having in the course of a lawful search come upon the [Anacin tin], he was entitled to inspect it; and when his inspection revealed the [LSD tablets], he was entitled to seize them as 'fruits, instrumentalities, or contraband' probative of criminal conduct." 414 U.S. at 236, 94 S.Ct. at 477, 38 L.Ed.2d at 441. That the matters so seized were unrelated to the cause for the original arrest is no grounds for objection. *United States v. Robinson,* supra; *State v. Venezia,* 515 S.W.2d 492 (Mo. banc 1974); *State v. Darabcsek,* 412 S.W.2d 97, 102[1] (Mo.1967); *United States v. Simpson,* 453 F.2d 1028, 1031[6–9] (10th Cir. 1972).

■ Appellant finally attacks the search and seizure as unreasonable because at the time he seized the pills, the officer did not know that they were LSD and, in fact, tests by him were negative, so that he had no reason to assume that they were a prohibited substance.

The officer had the right to act on reasonable appearance in seizing the tablets. He had the right to consider their appearance, the appellant's effort to conceal them and his interest subsequently in regaining the tin. The test at the police department did not show that the pills were not a controlled substance. Such tests as were run were merely negative.

In *United States v. Robinson,* supra, the heroin there involved was found in a search by an officer who discovered capsules of powder "which he thought to be, and which later analysis proved to be, heroin." Here the officer reasonably thought the tablets were a controlled substance and later analysis proved he was correct.

Appellant has cited no authority for the proposition that the substance seized must be identified as contraband when it is discovered. Here the officer acted on reasona-

ble appearances and the seizure was not illegal.

Appellant next contends that the tablets and the report of their analysis were improperly admitted in evidence because no proper chain of custody was shown in the handling of the items, and, therefore, the state did not prove that the items offered in evidence were those taken from appellant.

Officer Dale testified that he placed the two tablets in a vial and put it in an envelope at police headquarters. On August 18, 1972, he removed the envelope and the vial and took it to Sergeant Burnett of the Missouri State Highway Patrol at Macon. Sergeant Burnett took the package to the patrol laboratory in Jefferson City where the tablets were analyzed. Officer Dale testified that eight other persons had access to the evidence lockers at the police station, but that the envelope and pills were in the same condition when he removed them as they had been when he put them in the locker.

Appellant's objection to the chain of custody is based upon the evidence that others had access to the evidence locker at the Brookfield police station.

■ The state was required to prove a chain of possession adequate "to vouchsafe assurance that the exhibit has not been altered or tampered with and that there has been no substitution." *State v. Lemon,* 504 S.W.2d 676, 684[15, 16] (Mo.App.1973). Here the objection is based upon the fact that others had access to the exhibit while it was in the police evidence locker. All who had such opportunity were not called to deny that they had tampered with the exhibit, but that is not required. The officer testified that the envelope and its contents were in the same condition when he removed them as when he placed them in the locker. He relied, in part, upon the fact that, in the local testing, a part of one of the tablets had been broken off, and the exhibit showed that fact when the items were removed. The fact that others had access to the lockers does not, in these cir-

cumstances, render the proof of the chain of custody insufficient. *State v. McCrary,* 478 S.W.2d 349, 351 (Mo.1972); *State v. Winters,* 525 S.W.2d 417, 426[20–22] (Mo.App. 1975).

The case of *State v. Ilgenfritz,* 263 Mo. 615, 173 S.W. 1041 (1915), relied upon by appellant on this point, is distinguishable. There, evidence that clothing involved was bloodstained at the time that law enforcement officers took custody of it was lacking, so there was no showing that the condition of the clothing sought to be shown at the trial existed when it was worn by the defendant. Here, the evidence showed adequately that the tablets introduced in evidence were those taken from appellant's pocket.

An objection to the report of the chemical analysis of the tablets by the highway patrol chemist was also based on the chain of custody evidence that others had access to the locker. Trial counsel for defendant acknowledged: "After the Highway Patrolman received it, I do think that they do have a continuous chain." The previously reached conclusion, therefore, answers the separate objection to the chemist's testimony.

Appellant next complains that the trial court erred in permitting Officer Dale, "over appellant's objection, to testify that he placed appellant under arrest for being drunk in public, * * *."

The transcript shows the following on this issue:

"Q Had you placed Mr. Hedrick under arrest for any crime?

"A Yes, sir.

"MR. WHEELER (counsel for defendant): Object to this as immaterial and irrelevant.

"THE COURT: Overruled."

■ As the transcript shows, the objection was not made until the question had been answered and no motion was made to strike the answer. In these circumstances, there has been no proper objection which preserves any question for appellate review. *State v. Privett,* 347 Mo. 1144, 152 S.W.2d 73, 75[5, 6] (1941). It may be noted, also, that defense counsel, on cross-examination, brought out the reason for the arrest, and such evidence was not adduced on the direct examination of the witness.

■ Appellant next contends that the trial court erred in permitting Officer Dale to testify on rebuttal that when he took appellant to the jail, appellant asked to take the Anacin tin with him. Numerous objections have been raised to this testimony, among them that there was no preliminary hearing held on the voluntariness of the statement and that the state had represented that no oral statements of appellant would be used at the trial. Neither of these objections was raised when the evidence was offered. At the trial the objection to the testimony was on the grounds that it was repetitious and improper rebuttal. That objection cannot be expanded on appeal to include the objections now raised. Appellant is limited to the grounds of objection presented at the trial level. *State v. Jones,* 515 S.W.2d 504, 506[3, 4] (Mo.1974); *State v. Fields,* 434 S.W.2d 507, 513[1–3] (Mo.1968).

■ As for the propriety of the testimony as rebuttal testimony, appellant testified that after he was arrested he told Officer Dale that he had a headache and asked him for an Anacin. On cross-examination, appellant was asked whether or not he asked for the Anacin tin and he replied that he asked only for an Anacin. In rebuttal, Officer Dale testified that appellant asked him twice for the Anacin tin.

This testimony was proper rebuttal. It contradicted appellant's own testimony. The testimony sought to be contradicted was relevant on the issue of appellant's knowledge of the contents of the Anacin tin. Therefore, the admission of the evidence was not error. *State v. Woods,* 346 Mo. 538, 142 S.W.2d 87, 90[7] (1940).

■ Appellant's next assignment of error relates to questions asked by the prosecuting attorney on cross-examination of appellant's character witnesses. Numerous grounds of error are asserted, but the only one raised at the trial and preserved in the motion for new trial is that error was committed when the trial court overruled an objection to the prosecutor's question, directed to one of such witnesses, whether he had drunk with appellant. Objection that the question was "improper" was overruled and the witness replied, "Sociably yes." The question was designed to inquire of the nature of the witness's acquaintance with the appellant, his interest, and the extent of the witness's knowledge. *State v. Butler,* 309 S.W.2d 155, 158[2] (Mo.App.1958). The trial court is not to be held to have erred in overruling the general objection. *State v. Wagner,* 311 Mo. 391, 279 S.W. 23, 28[7, 8] (1925).

Appellant next contends that the state failed to prove beyond a reasonable doubt that he intentionally and knowingly possessed a controlled substance. *State v. Berry,* 488 S.W.2d 667, 668–669[1–4] (Mo.App. 1972).

■ The appellant's defense was that he had found the Anacin tin in a night club and had picked it up and put it in his pocket without being aware of its contents. The jury obviously disbelieved this testimony. Although such disbelief of itself could not satisfy the state's burden to show that appellant intentionally had the tablets in his possession and that he was aware of the character of the drug, such conclusion may be inferred from the circumstances of appellant's attempt to conceal the package upon being directed to empty his pockets at the police station and his efforts, according to the state's evidence, to regain possession of the tin. *State v. Darabcsek,* 412 S.W.2d 97, 103 (Mo.1967); *State v. Scarlett,* 486 S.W.2d 409, 410[1] (Mo.1972). This assignment of error is without merit.

Appellant's final assignment of error is that the trial court erred in permitting the prosecuting attorney in his closing argument to state that, if the jury did not wish to fix the defendant's punishment, the court would do so. The transcript filed here does not include the arguments on which this contention is based.

The transcript does contain a colloquy between the court and the foreman of the jury which occurred after the jury had retired and dealt with the punishment. At the conclusion of the colloquy and outside the hearing of the jury, the defense counsel moved for a mistrial, citing to the court the now complained of argument of the prosecutor. Counsel noted that the court had sustained his objection.

■ In these circumstances, there is nothing before this court for review, the argument of the prosecutor not having been included in the transcript. *State v. Carroll,* 333 Mo. 558, 62 S.W.2d 863, (1933). In any event, the claim that the argument "prejudiced" appellant's right to have his punishment determined by the jury is without merit. The jury did fix the punishment. Therefore, anything that might have been said about what would occur should the jury not agree on punishment was immaterial and obviously nonprejudicial.

Judgment affirmed.

All concur.